# United States District Court

### Eastern District of Washington



FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**JAN 2 5 2019**

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

DUANE WARD, an individual, and

and RACHELLE WARD, an individual

### Plaintiffs,

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

COUNTY OF BENTON, a public entity;
MARCO DEOCHOA, an individual and official;
KATHY LUND, an individual and official;
JENNIFER GOURLEY, an individual and offical;
Dr. REBECCA WEISTER; an individual and official;
ANA BROWN;an individual and offical;
LAUREN TRUSCOTT, an individual and official;
DAMON JANSEN, an individual and official;
BENTON COUNTY CPS, a public entity;
ROSS HUNTER, an individual and official;
JODY BECKER, an individual and official;
CHILDREN'S ADMINISTRATION, an entity;
DOES 1-30, Inclusive,

### Defendants

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the
space provided, please write "see attached" in the space
above and attach an additional sheet of paper with the full list
of names. The names listed in the above caption must be
identical to those contained in Section I. Do not include
addresses here.)*

Case No. **4:19-CV-5014-SMJ**

(To be filled out by Clerk's
Office only)

# COMPLAINT

Jury Demand?
☒ Yes
☐ No

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

If this is an employment discrimination claim or social security claim, please use a different form.

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

## I.    PARTIES IN THIS COMPLAINT

### Plaintiff

*List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.*

| Plaintiff: | WARD, DUANE, L.; WARD, RACHELLE, M; | | |
|---|---|---|---|
| | Name (Last, First, MI) | | |
| | 1310 THAYER DRIVE | | |
| | Street Address | | |
| | BENTON, RICHLAND | WA | 99354 |
| | County, City | State | Zip Code |
| | 509-947-1096 | CHELLY @HOTMAIL.COM | |
| | Telephone Number | E-mail Address (if available) | |

### Defendant(s)

*List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

| Defendant 1: | BROWN, Ana | | |
|---|---|---|---|
| | Name (Last, First) | | |
| | 2336 31st AVE S | | |
| | Street Address | | |
| | KING, SEATTLE | WA | 98114 |
| | County, City | State | Zip Code |
| Defendant 2: | WEISTER, Rebecca | | |
| | Name (Last, First) | | |
| | 401 Broadway, 2nd Floor Ste. 2075 | | |
| | Street Address | | |
| | KING Seattle, | WA | 98104 |
| | County, City | State | Zip Code |

**Defendant(s) Continued**

Defendant 5

GOURLEY, JENNIFER

Name (Last, First)

1661 Fowler St

Street Address

BENTON, RICHLAND          WA                    99352-4700

County, City              State         Zip Code


Defendant 6

JANSEN, DAMON

Name (Last, First)

871 George Washington Way

Street Address

BENTON, RICHLAND          WA                    99352-4700

County, City              State         Zip Code


Defendant ■

County Of Benton

Name (Last, First)

7122 W. Okanogan Place, Bldg A

Street Address

BENTON  Kennewick  WA  99320

County, City              State         Zip Code

Defendant ■

CHILDREN'S Administration

Name (Last, First)

1661 Fowler Street

Street Address

Benton, Richland, WA  99352

County, City              State         Zip Code

**Defendant(s) Continued**

Defendant    Truscott, LAUREN
             Name (Last, First)

             610 5th Ave, Seat
             Street Address

             King, Seattle    WA    98104
             County, City         State    Zip Code

Defendant    BENTON County CPS    RW    CPS
             Name (Last, First)                1661 Fowler St

             1161 Fowler Street                Benton, Richland
             Street Address                    WA

             Benton, Richland    WA    99352    99352
             County, City         State    Zip Code

Defendant    Hunter, Ross
             Name (Last, First)

             1500 Jefferson Street E.
             Street Address

             Thurston Olympia    WA    98504-1401
             County, City         State    Zip Code

Defendant    Jody BECKER
             Name (Last, First)

             1500 Jefferson Street E.
             Street Address

             Thurston, Olympia    WA    98504-1401
             County, City         State    Zip Code

**Defendant(s) Continued**

| | | | |
|---|---|---|---|
| Defendant 3 | DEOCHOA, MARCOS | | |
| | Name (Last, First) | | |
| | 1661 Fowler St | | |
| | Street Address | | |
| | BENTON, RICHLAND | WA | 99352-4700 |
| | County, City | State | Zip Code |
| Defendant | LUND, KATHY | | |
| | Name (Last, First) | | |
| | 1661 Fowler St | | |
| | Street Address | | |
| | BENTON, RICHLAND | WA | 99352-4700 |
| | County, City | State | Zip Code |

## II.   BASIS FOR JURISDICTION

*Check the option that best describes the basis for jurisdiction in your case:*

☐ **U.S. Government Defendant:** United States or a federal official or agency is a defendant.

☐ **Diversity of Citizenship:** A matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000.

☒ **Federal Question:** Claim arises under the Constitution, laws, or treaties of the United States.

If you chose "Federal Question", state which of your federal constitutional or federal statutory rights have been violated.

Claim 1: 42 U.S.C 1983, (Right to Family Association) and therefore has a right to the following;
CLAIM 2: 42 U.S.C 1985, (VIOLATION OF CIVIL RIGHTS);
CLAIM 3: 42 U.S.C. 1983 (Monell Claim)

This is

The people and entities involved are
all explained in the complaint.
Essentially, our son C.W. was
Seized. Merlin and Janice Bolling
caved for him as did Roy and
Rhonda wolfe. Plus a couple
of foster families.
Bold's Gym staff
Seattle Childrens staff.
Richland Police officers.

Was
anyone
else
involved?

C.W. was detained after an unreasonable seizure by Mario De Ochoa, CPS Children's Administration

The Detention of C.W. lasted 5 months. De Ochoa and Kathy lund had ~~do~~t No basis to seize him or keep him.

C.W. was in treatment for an acute life-threatening form of Leukemia.

Who did what?

## V.    INJURIES

*If you sustained injuries related to the events alleged above, describe them here.*

We reserve the right to submit and describe
injuries related to the event at trial.

## VI.    RELIEF

The relief I want the court to order is:

☒    Money damages in the amount of: $ 2,000,000

☐    Other (explain):

## VII.    CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

1-25-2019
Dated

Duane Ward
Plaintiff's Signature

WARD, RACHELLE M.
Printed Name (Last, First, MI)

WARD, DUANE, L.

1310 Thayer Dr
Address

Richland
City

WA
State

99354
Zip Code

(509) 947-1096  (509)947-1175
Telephone Number

wchelly@hotmail.com
E-mail Address (if available)

*List the same information for any additional plaintiffs named. Attach additional sheets of paper as necessary.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASINGTON

DUANE WARD, an individual; and
RACHELLE WARD, an individual,

      Plaintiffs,

vs.

COUNTY OF BENTON, a public entity;
MARCO DEOCHOA, individual and official
capacity;
KATHY LUND, individual and official capacity;
JENNIFER GOURLEY, individual and official
capacity;
DAMON JANSEN, individual and official
capacity;
LAUREN TRUSCOTT, individual and official
capacity;
ANA BROWN, individual and official capacity;
DR. REBECCA WEISTER, individual and
official capacity;
ROSS HUNTER, Individual and official capacity;
JODY BECKER, individual and official capacity;
CHILDREN's ADMINISTRATION, an entity;
CPS, an entity;
and DOES 1 through 30 inclusive,

      Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: No.
Judge:
Courtroom:

**COMPLAINT FOR DAMAGES**

**First Claim for Relief Action: Violation of Civil
Rights (42 U.S.C. 1983)
SECOND Claim for Relief Action: Violation of
Civil Rights (42 U.S.C. 1985)
THIRD Claim for Relief Action: Violation of
Civil Rights (42 U.S.C. 1983) MONELL CLAIM**

JURISDICTION AND VENUE

    1. Plaintiffs Duane Ward and Rachelle Ward bring this lawsuit pursuant to 42 U.S.C. §1983 to
redress the deprivation of rights secured to them under the United States Constitution, including
Fourteenth Amendment. These deprivations were inflicted by the Defendants herein, and each of them,
in some manner.

[COMPLAINT FOR DAMAGES] - 1

2. Jurisdiction is conferred pursuant to 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331 because the claims for relief derive from the United States Constitution and the laws of the United States.

3. Because the acts and omissions complained of herein occurred in Arizona, and it is believed that all Defendants currently reside in the State of WASHINGTON, venue is proper in the District Court for the District of WASHINGTON.

4. These allegations are based on Plaintiffs' personal knowledge, investigation by their counsel, and on information and belief.

PARTIES

At all times relevant to this Complaint, Plaintiffs Rachelle Ward ("Rachelle") and Duane Ward ("Duane") resided in the County of Benton County, WA, maintaining a family as the parents of their children, C.W. and G.W.

CHILDREN's ADMINISTRATION is an entity.

At all times relevant to this Complaint CPS includes but is not limited to DCYF, DSHS, BENTON COUNTY, At all times relevant to this Complaint CHILDREN's ADMINISTRATION, ROSS HUNTER, JODY BECKER, and DOES 1-50.

Plaintiffs are individuals and citizens of the United States of America.

At all applicable herein, the COUNTY OF BENTON was and is a public entity (BENTON COUNTY).

At all times applicable herein, MARCO DE OCHOA (DE OCHOA) was an individual residing, on information and belief, in the county of Franklin, and an officer, agent, and employee of BENTON COUNTY and BENTON COUNTY CPS. Defendant DE OCHOA is sued herein in both his individual capacity and in her official capacity as an employee of "The State of Washington"

At all times applicable herein, KATHY LUND (LUND) was an individual residing, on information and belief, in the county of Benton, and an officer, agent, and employee of BENTON COUNTY and BENTON COUNTY CPS. Defendant LUND is sued herein in both her individual capacity and in her official capacity as an employee of The State of WASHINGTON

At all times applicable herein, DIRECTOR/SECRETARY had supervisory responsibility and authority over Benton CPS and it's social workers and employees. Plaintiff is informed and believes and on such basis alleges that DIRECTOR/SECRETARY, at all relevant times mentioned herein, had the power to promulgate and implement policies governing the conduct of County social workers in relation to the Department's handling of juvenile dependency matters. Plaintiff is further informed and believes and on such basis alleges that DIRECTOR/SECRETARY has and had the power to investigate the conduct of Department employees and to mete out discipline upon employees who engaged in the wrongful conduct alleged herein. On further information and belief, Plaintiff alleges that DIRECTOR/SECRETARY is an officer, agent, and employee of the STATE of WASHINGTON. However, is identified herein as an agent of the STATE who had supervisory authority over the remaining County affiliated Defendants as the acting Director of DCYF. On information and belief, and/or in the alternative, Director/Secretary delegated such duties to DOES 1-20.

At all times applicable herein, Jennifer GOURLEY (GOURLEY), was, and remains, a Supervising Social Worker of Benton CPS. Defendant GOURLEY was an individual residing, on information and belief in Benton County, and an officer, agent, and employee of BENTON COUNTY and BENTON CPS. Defendant GOURLEY is sued herein in both her individual capacity and in her official capacity as an employee of Benton County. Defendant GOURLEY was, on information and belief, a Social Services Supervisor. GOURLEY sat in on an interview with C.W. in July 2014 with Evann Hall, sat in on an interview with Duane and Rachelle in February 2015 and introduced by LUND as a DCFS Supervising Social Worker.

Beginning on March 7, 2014 and ending February 19th, 2015, Rachelle and C.W. were temporary residents of King County, Washington.

At all times applicable herein, SEATTLE CHILDREN'S HOSPITAL (SCH) was and is on information and belief, a private, nonprofit medical center located in the County of King. The hospital is charged with the detection and prevention of child abuse and neglect, and therefore was also a state actor in an official capacity.

At all times applicable herein, KELLY FAUCETTE (FAUCETTE) was an individual residing, on information and belief, in the county of King, and an officer, agent, and employee of SCH. Defendant FAUCETTE is sued herein in both his individual capacity and in his official capacity as an employee of SCH.

At all times applicable herein, CHILDREN'S PROTECTION PROGRAM, (SCAN) was and is a subdivision or entity of SCH. SCAN is charged with the detection and prevention of child abuse and neglect, and therefore was also a state actor in an official capacity. "SCAN" is an entity of Seattle Children's Hospital. The Seattle Children's Protection Program manages "Stop Child Abuse Now" (SCAN).  SCAN provides formal consults to examine the child when there is concern for serious abuse/neglect. Provides consultation to the community via the Statewide Child Abuse Network.

At all times applicable herein, REBECCA WEISTER (WEISTER) was an individual residing, on information and belief, in the county of King, and an officer, agent, and employee of SCH and SCAN. Rebecca Weister, MD is the Medical Director of the SEATTLE CHILDREN's Protection Program (SCAN), and serves as a consultant for DYFS throughout the State of Washington.

Defendant WEISTER is sued herein in both her individual capacity and in her official capacity as an employee of SCH and SCAN

At all times applicable herein, BROWN (BROWN) was an individual residing, on information and belief, in county of King, and an officer, agent, and employee of SCH and SCAN.  Defendant BROWN is sued herein in both her individual capacity and in her official capacity as an employee of SCH and SCAN.

Ana BROWN was a SOCIAL WORKER contracted by CHILDREN's, and working under the watch of Dr. WEISTER for the CHILDREN's Protection Program SCAN.

17. At all times relevant herein, Defendant Lieutenant DAMON JANSEN ("Officer Jansen") is and was an individual residing in the County of BENTON, and employed by the City of Richland Police Department. At all relevant times herein, Officer Jansen was performing and/or carrying out his official duties as a RPD official, employee, and/or agent, and was acting under color of law.

18. At all times relevant herein, Defendant OFFICER LAUREN TRUSCOTT ("Officer TRUSCOTT") is and was an individual residing in the County of KING, and employed by CITY OF SEATTLE POLICE DEPARTMENT employed as an officer. At all relevant times herein, Officer TRUSCOTT was performing and/or carrying out her official duties as a KING County official, employee, and/or agent, and was acting under color of law.

At all times relevant to this Complaint, DEFENDANTS includes all defendants.

19. At all times relevant herein, Defendant DOES 1-20 are and were individuals residing in the County of BENTON, and employed by BENTON County as DSHS social workers. At all relevant times herein, DOE 110 were performing and/or carrying out their official duties as BENTON County officials, employees, and/or agents, and were acting under color of law.

At all times relevant herein, Defendant DOES 21-30 are and were individuals residing in the County of KING, and employed by CHILDREN's.  At all relevant times herein, DOE 21-30 were performing and/or carrying out their official duties as BENTON County officials, employees, and/or agents, and were acting under color of law.

At all times relevant to this Complaint, defendant ROSS HUNTER, Individual and official capacity;

At all times relevant to this Complaint, defendant JODY BECKER, Individual and official capacity;

23. Plaintiff is ignorant of the true names and capacities of those Defendants sued as DOES 1 through 50. When ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities.

24. At all times mentioned herein, each of the above identified Defendants were acting under color of law in committing the acts alleged, and were acting within the course and scope of their duties.

25. Defendants were the knowing agents and/or alter egos of one another. Defendants directed, ratified, and/or approved each other's conduct and that of each other's agents or employees. Defendants agreed upon, approved or ratified each other's conduct, or otherwise conspired together to commit all of the acts and/or omissions alleged herein. The above defendants are responsible for the occurrences complained of, and conspired with, and/or aided and/or abetted each other in committing the acts complained of.

GENERAL ALLEGATIONS

Duane and Rachelle met in the Midwest and have been together 24 years.  Duane and Rachelle moved to Richland, WA after Duane was offered full-time employment here in Washington State in 2002.

The family joined Redeemer Lutheran Church in Richland, WA, where they have been members since 2002.  The church became a large part of their support network.

C.W. is a resident of the State of Washington and is the minor son of Duane and Rachelle Ward.

G.W. is a resident of the State of Washington and is, at this time, the adult daughter of Duane and Rachelle

Their lives changed in an instant when C.W. was diagnosed with Acute Lymphoblastic Leukemia (ALL) with Philadelphia Positive subset in March of 2014.

Historically, a patient with a diagnosis of with Philadelphia Positive ALL has a very dismal long-term life expectancy. As a result, C.W. enrolled in a cutting edge clinical trial study, (AALL1122), to treat children who are at very high risk of death due to the Philadelphia Positive subset.

To participate in the Clinical Study, Rachelle and C.W. were immediately required to temporarily move to Seattle and stay within 40 minutes of Seattle Children's Hospital, so C.W. could participate in a trial study for ALL patients with the Philadelphia Positive subset.  Mother and son were in Seattle for almost 12 months. Meanwhile, C.W.'s chemotherapy treatments continued for an additional year after they returned home to Richland, WA.

C.W.'s diagnosis and prognosis for the future were traumatic for the family.  C.W. was frightened and uncomfortable.  His biggest fear was that he was going to die. The whole family experienced grief not only after the initial diagnosis but also after finding out that he had the Philadelphia Positive Arrangement, which resulted in a level of hopelessness and despair.  Being Philadelphia Positive places C.W. in a rare subset of ALL where he is one in a million for kids under the age of fourteen who are stricken with Acute Lymphoblastic Leukemia.  Historically, this form of leukemia has a dismal prognosis of survivability for children.

Even though they experienced extreme emotions, the family knew that they had to function on a daily basis. Since C.W. was diagnosed with a life-threatening form of Leukemia, the focus remained on keeping C.W. in the best physical condition possible so his body would be healthier when dealing with the treatment and medications.  C.W.'s parents understood that it was beneficial to accept any help that was offered, but they also were determined to keep C.W. the focus of their energy and attention.

C.W. remained at SCH in King County, Washington while undergoing an intense drug treatment protocol stipulated in a clinical trial (AALL1122).

C.W. was physically sick from the Leukemia for the first few months.

C.W. experienced side effects caused by Induction chemotherapy treatments that caused emotional peaks and valleys and physical limitations such as moving/walking very slowly, difficulty with balance and picking up his feet, pain in his joints, and pain in general during this time. Additionally, C.W.'s immune system was compromised during this treatment phase; therefore, it was necessary to limit his environment to locations within 40 minutes of the hospital, and carefully monitor and limit his exposure to threats to his immune system.

[COMPLAINT FOR DAMAGES] - 4

1    When C.W. was diagnosed with an acute, life-threatening illness, John Hudspeth, a family friend
of the Ward family, came to Seattle and he planned to be there one or two nights. John has a
2    background in caregiving and was asked to serve as one of C.W.'s caregivers. In the medical records, he
is referred to as the approved caregiver for C.W. He has 55 years of caregiving experience. John's role
3    model was his dad who raised 4 boys. John started caring for his special needs brother Robert when he
was 7 years old. John was also a caregiver for his father up until the day he died from cancer.
4        Additionally, he was a caregiver for his mother for 7 months after her stroke while caring for his
special needs brother at the same time. John cared for another brother Bill who was diagnosed with
5    Leukemia as an adult. John spent the last 30 days in the hospital with his brother Bill who died from
sepsis, a complication of Leukemia. Last, but not least, John was also a caregiver for his sister-in-law
6    who died from complications of diabetes.
         John Hudspeth, remained with C.W. and the family for several months. The days were long, and
7    Rachelle and Duane were overwhelmed with the challenges they faced. They wanted a supportive adult
in the room with C.W. at all times to monitor medical information, monitor and support treatments for
8    adverse reactions, and support C.W.'s emotional needs. And so Rachelle asked John to stay to help care
for C.W. John, Rachelle and Duane would often take shifts while the others got some rest in the nearby
9    Ronald McDonald house. One day while Rachelle was away a nurse overdosed C.W. on an opioid. John
questioned her about C.W.'s reaction. The nurse made up a story to cover-up her mistake, and that is
10   what brought in the Seattle Police Department and CPS. The cover-up, was the beginning of a
downward spiral of events that resulted in C.W. being separated from his parents and left to endure
11   cancer treatments on his own in the cancer ward of Seattle Children's Hospital. That nurse impeached
herself in the Interviews, and her testimony did not line up other facts or with the testimony of other
12   witnesses.

13   -    **THE ORIGINAL EVENT THAT SET THIS OFF**
         A false nurse report and a flawed investigation was the catalyst the violation of Rachelle and
14   Duane's 14th amendment rights. C.W. was admitted to Seattle Children's Hospital on Friday, June 20,
2014, because of fever. C.W. was on track to be released from the hospital Monday morning, but that
15   didn't happen, and the reason was unclear. Later that day, Social Worker BROWN, informed Rachelle
that she could not take C.W. from the Hospital. [1] Rachelle was aware that C.W. was not free to leave the
16   hospital, this is an unreasonable seizure, per se. Two days later, CPS AND A SEATTLE POLICE
DEPARTMENT investigator, Lauren Truscott was brought in for an investigation. A warrantless seizure
17   occurred after TRUSCOTT witnessed an interview conducted by forensics expert, Shana McCloud with
C.W. where he was clear that nothing happened. Social Worker BROWN and TRUSCOTT entered the
18   room where Rachelle was being interviewed, and the interview turned into an interrogation, complete
with inflammatory and baseless statements. Detective Smith and Social Worker Blackwell were also
19   present in the interview.
         To be clear, TRUSCOTT walked out of an interview conducted by the Prosecuting Attorney's
20   office forensics expert, where C.W. was clear as a bell that nothing inappropriate happened, into an
ongoing interview with Rachelle. TRUSCOTT produced a Custody without a Court Order. C.W. had been
21   detained. The act was rogue and cruel and unconstitutional. There was no incident, no court order, and
no emergency. BROWN who actively participated in the interview, informed Rachelle that C.W. was no
22   longer Rachelle's. Brown conspired with detective Truscott by fully engaging in police interrogation and
providing false and misleading statements. BROWN also provided false and misleading statements.
23   BROWNS misrepresentations were eventually determined unfound and the case closed. However,

24

25   _____

1   DEOCHOA used her false and misleading statements in the second dependency petition as though they
    were fact, which became part of the basis for seizing C.W. the second time.

2           DEOCHOA and SUPERVISOR SULLIVAN coerced Rachelle and Duane into signing a Voluntary
    placement agreement. Rachelle revoked the VPA a few days later. BROWN was the moving force
3   behind an Administrative Hold by the hospital. TRUSCOTT then reissued another Custody without a
    Court Order, and then DEOCHOA filed a dependency petition under penalty of perjury, using
4   misrepresentations, omissions and distortions from primarily from BROWN and TRUSCOT, which
    resulted in a Shelter Care Order. There was no specific articulable evidence that C.W. was at risk of
5   imminent harm at the hands of his parents. [Seizures] conducted without a [Court Order] are per se
    unreasonable under the Fourth Amendment-subject only to a few "specifically established and well-
6   delineated exceptions." There was not an adequate and prompt judicial review to ratify that any
    emergency existed, nor was there adequate or prompt judicial review. Meanwhile, C.W. was going
7   through the harshest part of his chemotherapy protocol, the chemotherapy drugs, and their side effects
    alone in the hospital. What happened to C.W. when he was being detained basically solely for a
8   potential threat, was harmful to C.W., and harmful to C.W. parents.

            "Only where a child's life is in imminent danger or where there is an immediate danger of
9   severe or irreparable injury to the child's health, and prior judicial authorization is not immediately
    obtainable, may an official summarily assume custody of a child from his parents." Jordan by Jordan v.
10  Jackson, 15 F.3d 333, 346 (4th Cir.1994). C.W. was not in imminent danger. DETECTIVE TRUSCOTT
    picked the facts she liked and turned a blind eye to the facts and witnesses that did not support her
11  narrative. She tainted witnesses. During an interview with C.W.'s grandmother, TRUSCOTT gave her the
    go-ahead to question C.W. about what happened, and as a result a lot of pressure was placed on C.W.
12  She avoided interviewing C.W.'s primary care nurse practitioner, Karyn Brundige. An interview with
    Karyn Brundige would not have supported Truscott's theory. Even given that, eventually the case was
13  settled and resolved, the family returned home, and the case dismissed and closed. C.W.'s was now in
    what is considered the 'continuation' or 'maintenance' phase of his treatment protocol which meant he
14  could be at home with his family while continuing to take chemotherapy medications and still be
    monitored by Seattle Children's through clinic visits.
15
            -   **ANOTHER UNREASONABLE SEIZURE**
.6  About a year after returning home, while he was still on treatment, a second dependency was filed.
    DEOCHOA interviewed C.W., as well as Rachelle and Duane. The interview with C.W. was done without
17  his parents' consent at school. DECHOA misrepresented the conversation with C.W. in the Petition.
    DEOCHOA did not interview any of the witnesses from GOLD'S GYM. He did not visit GOLD'S GYM.
18  DEOCHOA did not contact HUGH BARBER, Sr. Prossecuting
    Attorney out of King County.

19          Rachelle and Duane met with DEOCHOA at their attorney's office and lieutenant
    JANSEN, who was not assigned by the Richland Police Department for an investigation, showed
20  up to this meeting. Rachelle and Duane defended themselves when JANSEN and DEOCHOA
    misrepresented the facts of what happened in Seattle. Rachelle and Duane defended John
21  when JANSEN and DEOCHOA misrepresented the facts of what happened in Seattle. The
    same factual information that was given to LUND and GOURLEY in February 2016, and
22  eventually put into the Petition for a Harassment order of Protection denied by Judge
    Runge, was given to DEOCHOA and JANSEN. Rachelle and Duane explained that supervised
23  contact was allowed between C.W. and John by a Judgement and Sentencing stipulation out of
24  King County. They also told that it all started with one nurse who made a mistake with an
25  opioid, and then to cover it up, she made up some stories. The outcome of the case and the

underlying problems with the investigation.  They explained that the charges were based on the application of the medically necessary ointment, that C.W. was not expected to apply himself.

Rachelle and Duane provided DEOCHOA and JANSEN with documents containing exculpatory evidence in that meeting, including the Judgement and Sentencing Document JANSEN was already in possession of at that time.  Lieutenant JANSEN and INVESTIGATIVE SOCIAL WORKER DEOCHOA intimidated and coerced Rachelle and Duane into a verbal agreement on January 13, 2016.  With an overbearing presence, JANSEN verbalized misrepresentations and misstatements he received directly from TRUSCOTT. Rachelle and Duane disagreed with JANSEN. The intimidating behavior from JANSEN and INVESTIGATIVE SOCIAL WORKER DEOCHOA was unrelenting. Under coercion, Rachelle and Duane finally agreed to stop contact between John and C.W.  In exchange for compliance, INVESTIGATIVE SOCIAL WORKER DEOCHOA verbalized he was closing the case, and no dependency would be filed.  To close the meeting, DEOCHO told Rachelle and Duane that if they continued to allow contact between John and C.W., CPS would continue to receive calls of concern from the community, and he would have to continue to investigate. No other services or options were offered to the parents.  A group of CPS supervisors staffed the case on or about January 18, 2016 and decided to move forward with the dependency case.  C.W. was seized twenty-five days after the workout at GOLD'S GYM.  The seizure violated statutes and basic constitutional principles about trying to keep the family together.

Back in October 2015, TRUSCOTT took it upon herself to provide Detective JANSEN of the Richland Police DEPARTMENT with misrepresentations supporting her baseless theory. Jansen received a copy of the Judgement and Sentence out of King County after he spoke with Hugh Barber, Sr. Prosecuting Attorney out of King County.  Truscott conspired with Lieutenant Jensen by volunteering misrepresentations and false evidence that influenced the decision to seize C.W. Jensen sat down with a group of CPS supervisors and provided false and misleading information he received from Truscott, which was used as part of the dependency petition that led to C.W.'s detainment.

This dependency was based on a false police report from a GOLD's GYM Manager who did not witness anything he reported.  DEOCHOA seized C.W. after obtaining a court order, however, the court order was issued by an unwitting Commissioner who was misled by the vast amount of misinformation and misrepresentations provided by DEOCHOA's declaration signed under penalty of perjury in the dependency petition [2]. The Commissioner relied on the investigative work of DEOCHOA and allegations in the report. C.W. was seized twenty-five days after the workout at Gold's Gym occurred. The facts did not support imminent danger. Parents did not receive notice and did not have an opportunity to be heard before the seizure.

Rachelle and Duane had a fundamental liberty interest in the "care, custody and management" of C.W. protected by the Due Process Clause of the Fourteenth Amendment, and in the absence of an emergency, may not be infringed upon without providing a prompt and adequate hearing.  C.W. had a nosebleed at GOLD's GYM and based on CPS' actions; it was not

an emergency. CPS' decision to wait 25 days to seize C.W. does not support the idea that C.W. was in imminent danger of harm.

DEOCHOA knew that the bulk of the dependency petition included misinformation from the previous case that had since been resolved, settled, and closed. The first paragraph, including a statement incorrectly tying Rachelle and Duane a Judgement and Sentencing document out of King County, was written to be intentionally misleading. The final section was based primarily on opinions and conjecture. Parts of the paragraph were factually untrue, including the last sentence, which put an exclamation point on the petition. The only new information was the report from GOLD's GYM.

Officials violate [the Fourteenth Amendment] if they remove a child from the home absent 'information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury. The investigation conducted by INVESTIGATIVE SOCIAL WORKER DEOCHOA was inadequate, both before and after the seizure. Even without doing interviews, there are inherent flaws in the allegations coming from the GOLD's GYM manager. A sense of emergency is suggested by plaintiffs' allegations regarding the timing of the C.W.'s detention.

The Judgement and Sentencing document DEOCOA was referencing, had no connection to Rachelle and Duane. At the time, Rachelle and Duane were not involved in any agreement. Even so, Rachelle and Duane made sure contact was supervised. The King County Court that issued the document allowed Supervised Contact between C.W. and John. King County received the report from the Kennewick Police Department but did not take any action.

DEOCHOA knew what he was doing when he signed that Dependency Petition under Penalty of Perjury and submitted it to the Juvenile Court on January 26, 2016. In looking at the number of days, CPS waited to seize C.W. between January 2 and January 27, CPS's behavior following the intake, is unsupportive of the idea that CPS believed C.W. was in imminent danger. Most importantly, CPS decided to leave C.W. in his home after the interviewing C.W. Second, INVESTIGATIVE SOCIAL WORKER DEOCHOA communicated to Rachelle and Duane that he did not plan to file a Dependency Petition, and that if the contact did not stop, he would continue to get calls of concern, and he would have to investigate.

If it were not for the following five material misrepresentations, the Court Order to Seize C.W. would not have been granted. The first paragraph of the dependency petition was written in a manner that was incomprehensible and misleading. The Judgement and Sentence issued by Judge Hill in a King County Court allowed supervised contact. A second issue was that a bulk of the dependency petition reintroduced misrepresentations from a case that had been settled and closed, and the case dismissed. DEOCHOA had a duty to communicate in a transparent manner, to the Commissioner, that a dependency petition full of misrepresentations, had been settled, closed, and dismissed. Next, the interview with C.W. was misrepresented. C.W. has been clear that nothing inappropriate happened. In the interview, C.W. had a hard time understanding DEOCHOA because of how the questions were presented. Fourth, the original call from GOLD'S GYM reported Inappropriate Horseplay in a swimming pool. There was no incident. And GOLD's GYM was supervised. Finally, CPS brought in an expert to help in writing a portion of the dependency petition who had a

prejudiced in this case because of her involvement in prior unfounded allegations against Rachelle and Duane. Her opinions were not based on fact, but opinions and conjecture. Her distorted statements and misrepresentations became a part of the basis for seizing C.W. from his parents.

Dr. WEISTER as a consultant for the Seattle Children's Hospital SCAN TEAM Dr. WEISTER is the director of the SCAN program. WEISTER's had an investment in the outcome of the case because she had a reputation to protect. The SCAN team maintained the Lead in the first dependency.

The quotes WEISTER wrote her SCAN report were based on TRUSCOTT and BROWN's misstatements and misrepresentations when stacked together, the misrepresentations clearly show how ridiculous and outlandish the narrative became. The format she uses along with the misstatements and misrepresentations, unfairly change and distort the reality of what occurred.

- **Post Deprivation ("The Protection Order Route")**

It is well established that when emergency action is necessary to avert imminent harm to a child, post-deprivation judicial review and a process to ratify the emergency action be prompt and fair. Following the unreasonable seizure of C.W., due process of law was lacking. Rachelle and Duane were offered a deal that in exchange for putting a protection order into place, they would get C.W. back, and the process would be faster than going to trial. Rachelle and Duane but it was unclear when the facts would be presented. They didn't see any options, CPS had something that was precious to them. They had C.W. When GOURLEY and LUND met with Plaintiffs on February 26, 2016, Rachelle and Duane adamantly disagreed with the allegations in the petition. The same factual information that was given to DEOCHOA and JANSEN, and eventually put into the Petition for a Harassment order of Protection denied by Judge Runge, was given to LUND and GOURLEY.

When Rachelle and Duane finally complied with the protection order requirement by obtaining a temporary Harassment Protection Order through Superior Court, the Court did not return C.W. home to live with his parents, nor did it relax or expand visitation. In early March, LUND interviewed a key witness who provided exculpatory evidence that was withheld from Rachelle and Duane, and the commissioner.

Increasing pressure to serve the protection order was put on Rachelle and Duane to serve the protection order at each hearing. Another hearing occurred where exculpatory information was not disclosed and Rachelle and Duane were threatened with a trial and no legal representation unless the protection order was served. It became clear that it was impossible for Rachelle and Duane to serve a Protection Order on a person who was unavailable. Realizing this, LUND offered amended Shelter Care Orders, expanding visitation, while including misrepresentations unfavorable to Rachelle and Duane.

Eventually, that protection order was inadvertently dismissed, and when Rachelle petitioned the court for another protection order containing the same allegations, it was denied by Judge Runge.

"The Protection Order Route" originally started as an option. It was first framed by the Commissioner as permission from the Court to seek a protection order, in another court. The option for a Protection Order became a requirement with LUND. "The Protection Order Route"

[COMPLAINT FOR DAMAGES] - 9

interfered with Rachelle and Duane's rights to an adequate and prompt judicial review. It also interfered with their rights to an adequate and prompt judicial review that would ratify the decision to detain C.W. A trial date was set for July 2016, six months after C.W.'s seizure.

- **CASE DISMISSED**

Exculpatory evidence, suppressed by LUND, was not presented to the Court in a timely manner. The temporary protection order was inadvertently dismissed. When Rachelle and Duane petitioned the Court for another Protection order, Judge Runge denied the order and sent the issue back to the Juvenile Court because she recognized that it did not belong in her Court.

LUND and GOURLEY knew that Rachelle and Duane did not believe that anything inappropriate had happened. None-the-less, LUND and GOURLEY used coercion to compel Rachelle and Duane into doing something legally that normally they would not do. A requirement to seek, obtain, and make permanent, a Protection Order in order to get your child back is not the intended purpose of that particular resource. LUND and GOURLEY knew that there was no basis. The requirement for a protection order was used to harass and annoy Rachelle and Duane. It was done intentionally by LUND and Supervisor GOURLEY. And it was done with a serious disregard for Rachelle and Duane's liberty interest in Family Association with C.W. and their pursuit of happiness. LUND and GOURLEY to use a judicial resource in an improper manner to force compelled Rachelle and Duane to do something legally that they normally would not do. Most of the time and effort during the pendency of the dependency was spent on the protection order requirement. Meanwhile, C.W. was held for five months and out of the care, custody, and control of Rachelle and Duane. C.W. experienced a series of traumatic and adverse seizures and detainments that were without basis.

The dependency was dismissed on June 14, 2016 after an Assistant Attorney General FOSTER, Implored Commissioner Potts to dismiss the case. Commissioner POTTS was visibly uncomfortable with hearing this information for the first time during the pendency of the dependency. She dismissed the case and C.W. returned home to his family unit.

**FIRST CLAIM FOR RELIEF - #1983**
**COUNT 1**
**Fourteenth Amendment Due Process**
**Right To Family Association**
(By Plaintiffs Against Defendants DEFENDANTS)

**Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in full, all paragraphs above.**

"Parents and children have a well-elaborated constitutional right to live together without government interference." Wallis v. Spencer, 202 F. 3d 1126 (9th Cir. 2000). This substantive due process right to familial integrity and privacy is violated when State Officials deliberately resort to judicial deception to persuade a judge or commissioner to grant a court order to remove a child from the parent's custody. Judicial deception, in the context of seeking

a court order, includes misrepresenting, distorting, and omitting material facts in order to sway a judge or commissioner into authorizing the seizure of a child. The issue at stake is the fundamental rights of the parents weighed against justifiable action by CPS. The due process clause of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 Led.2d 49 (2000). This heightened protection encompasses the right of parents to the "care, custody, and management" of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In the context of forcefully removing a child from the parents, the "touchstone of the Fourth Amendment is reasonableness." Snell v. Tunnell, 920 F.2nd at 697 (10th Cir.1990). The Fourth and Fourteenth Amendments share the same legal standards in respect to any effort by the State to remove a child. Wallis v. Spencer, 202 F.3d 1126, 1137 n.8 (9th Cir.2000) "the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children". The courts have held that removing a child from the parent's custody is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances. Obtaining a court order by deceiving a judge or commissioner in order to obtain judicial authorization is unjustifiable and therefore unreasonable. The standard of reasonableness established by legal precedent makes this type of seizure a clear violation of the Fourth, and by direct effect the Fourteenth Amendment of the Constitution. Arapahoe County Dept. of Social Services, 191 F.3d 1306, 1315 (10th Cir. 1999). "government officials' procurement of a court order to remove children based on information they knew was founded on distortion, misrepresentation and omission, violated the Fourth Amendment".

Defendants, and each of them and at all times relevant herein, an affirmative duty and

obligation to not violate the protections guaranteed Plaintiffs under the United States

Constitution, including the protection of the parental right to family association.

**DEFENDANTS, and each of them, and DOES 1 through 50, inclusive, and thereby acting under color of state law, jointly collaborated and acted together to deprive and did deprive Rachelle and Duane of their constitutional right to Family Association under the Fourteenth Amendment to the United States Constitution including but not limited to willfully seizing C.W. without any legal basis whatsoever, without first obtaining a [reasonable] warrant, and in the absence of any exigency, and/or being a moving force behind the unreasonable seizure and/or being a moving force behind continuing to detain C.W. without any basis.**

**In depriving plaintiffs of their Constitutional rights to their parental/child relationship and familial association under the Fourteenth Amendment to the United States Constitution, Defendants, and each of them, directly and proximately caused past and future damages to plaintiffs as prayed for herein, including mental anxiety, anguish and upset.**

**The conduct alleged herein was done in deliberate or reckless disregard of plaintiffs' constitutionally protected rights justifying the award of exemplary damages against all non-entity/municipality Defendants in an amount according to proof at the time of trial in order to deter them from engaging in similar conduct and to make an example by way of monetary punishment, plaintiffs are also entitled to attorney fees and costs of suit herein.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**COUNT 2**

Fourteenth Amendment – Procedural Due Process Right
Right to Adequate Pre-deprivation Procedures
**(Notice and a hearing are required before a child is removed 'except for extraordinary
circumstances' including 'emergency circumstances
which pose an immediate threat to the safety of a child.)**

23
24
25

(By Plaintiffs Against Social Worker DEOCHOA, and DOES 1 through 20, inclusive.)

**Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in full, all paragraphs above.**

Notice and a hearing are required before a child is removed "'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir.1989) (quoting Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 848, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977)) Parental rights cannot be denied without an "opportunity for them to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), "Valid governmental interests" include "emergency circumstances which pose an immediate threat to the safety of a child." Hollingsworth v. Hill, 110 F.3d 733, 739 (10th Cir.1997). As the Second Circuit has noted, the "mere possibility" of danger is not enough to justify a removal without appropriate process.

**Social Worker DEOCHOA, and each of them, and DOES 1 through 50, Inclusive,** were acting under color of state law when they acted, or knew and agreed and thereby conspired, **to remove C.W. from Plaintiff's care, that the "mere possibility" of danger is not enough to justify a removal without appropriate process.**

**Social Worker DEOCHOA, and each of them,** DOES 1 through 50, conspired to violate the civil rights of the PLAINTIFF, including violation of PLAINTIFF's rights found in the Due Process Clause under the Fourteenth Amendment of the United States Constitution, **by knowing at the time of C.W.'s detention that the "mere possibility" of danger is not enough to justify a removal without appropriate process, in violation of, and interference with, PLAINTIFF's constitutional right to familial integrity and/or association under the Fourteenth Amendment.**

As a direct result of these defendants' violation, and in accordance with 42 U.S.C. Section 1983, Plaintiff's civil rights have been violated in that she has suffered, and will continue to suffer, damages including but not limited to, physical and/or mental anxiety and anguish, as well as to incur attorney's fees, costs and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. section 1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

Defendants' wrongful conduct as herein alleged was intentional, done with malice, and with a conscious disregard for the rights of the Plaintiff, and as a result of this despicable conduct, Plaintiff is therefore entitled to recover punitive damages **from INVESTIGATIVE SOCIAL WORKER DEOCHOA, and DOES 1 through 50, Inclusive,** only in an amount commensurate with the nature of the Defendants' wrongful acts and the amount of the Defendants' wealth.

At all times, relevant herein, the right to familial association guaranteed under the Fourteenth Amendment to the United States Constitution was clearly established, such that **any reasonable social services agent and/or police officer would know at the time of C.W.'s detention that the "mere possibility" of danger is not enough to justify a removal without appropriate process, in violation of, and interference with, PLAINTIFF's constitutional right to familial integrity and/or association under the Fourteenth Amendment.**

Prior to the unreasonable seizure of C.W., Defendants Investigative Social Worker DEOCHOA, and DOES 1 through 50, Inclusive, and each of them knew that removing C.W. from his home that the "mere possibility" of danger is not enough to justify a removal without appropriate process.

AS a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

**DEOCHOA, and DOES 1 through 50, Inclusive,** acted intentionally and/or with a conscious disregard for Plaintiffs' constitutional rights. As a result of this conduct, Plaintiffs are entitled to recover punitive damages against these individual defendants.

1

## COUNT 3

2

Fourteenth Amendment – Procedural Due Process Right,
To Adequate Pre-deprivation Procedures

3

(Right to an investigation and a pre-deprivation hearing
resulting in a court order prior to removal, absent exigent circumstances.)

4

5

(By Plaintiffs Against. Social Worker DEOCHOA, and DOES 1 through 30, inclusive.)
**Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in full, all paragraphs above.**

6

7

Minimally, [Due Process] also means that government officials will not remove a child from his home without an investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances.   Hollingsworth v. Hill, 110 F.3d 733, 739 (10th Cir.1997) ( "Removal of children from the custody of their parents requires pre-deprivation notice and a hearing except for extraordinary situations where some valid governmental interest is at stake that justified postponing the hearing until after the event."); Malik, 191 F.3d at 1315 (a parent has a liberty interest in familial association and privacy that-absent extraordinary circumstances-cannot be violated without adequate pre-deprivation procedures).

8

9

10

11

**DEOCHOA, and each of them, and DOES 1 through 50, Inclusive,** were acting under color of state law when they acted, or knew and agreed and thereby conspired, to remove C.W. from Plaintiff's care, **without doing an investigation, providing Rachelle and Duane with notice and an opportunity to be heard in a pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances.**

12

As a direct result of defendant DEOCHOA, and each of them, and DOES 1 through 50, Inclusive,  violation, and in accordance with 42 U.S.C. Section 1983, Plaintiff's civil rights have been violated in that they have suffered, and will continue to suffer, damages including but not limited to, physical and/or mental anxiety and anguish, as well as to incur attorney's fees, costs and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. section 1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

13

14

Defendants' wrongful conduct as herein alleged was intentional, done with malice, and with a conscious disregard for the rights of the Plaintiff, and as a result of this despicable conduct, Plaintiff is therefore entitled to recover punitive damages from **SOCIAL WORKER DEOCHOA,  and DOES 1 through 50, Inclusive,** only in an amount commensurate with the nature of the Defendants' wrongful acts and the amount of the Defendants' wealth.

15

.6

At all times, relevant herein, the right to familial association guaranteed under the Fourteenth Amendment to the United States Constitution was clearly established, such that **any reasonable social services agent and/or police officer would know that at a minimum, government officials will not remove a child from his home without an investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances.**

17

18

**Prior to the unreasonable seizure of C.W., Defendants Investigative Social Worker DEOCHOA, and DOES 1 through 50, Inclusive, and each of them knew that removing C.W. from his home without an adequate investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances.**

19

20

AS a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

21

22

**DEOCHOA,  and DOES 1 through 50, Inclusive,** acted intentionally and/or with a conscious disregard for Plaintiffs' constitutional rights.  As a result of this conduct, Plaintiffs are entitled to recover punitive damages against these individual defendants.

23

24

25

## COUNT 4

Fourteenth Amendment – Procedural Due Process Right,
To Adequate Pre-deprivation Procedures
(To be free from Deception in the Presentation of Evidence to the Juvenile Court)
(By Plaintiffs Against. Social Worker DEOCHOA, and DOES 1 through 30, inclusive.)

**Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in full, all paragraphs above.**

Implicit in the *Franks* concept of reasonableness under the Fourth Amendment "is that the information on which the social worker proceeds ... is not known to be false." *Snell,* 920 F.2d at 699.  The *Franks* rule applies to omissions as well as affirmative misstatements if the magistrate or judge was misled by them. *DeLoach,* 922 F.2d at 621-22. The question comes down to whether the defendant's actions were objectively reasonable in light of the law and information the defendant possessed at the time of his actions. *Hollingsworth v. Hill,* 110 F.3d 733, 737 (10th Cir. 1997).

**DEOCHOA, and each of them, and DOES 1 through 50, Inclusive,** were acting under color of state law when they acted or knew and agreed and thereby conspired, **to remove C.W. from Plaintiff's care, knowing that information in the petition was misleading.**

As a direct result of defendant **DEOCHOA, and each of them, and DOES 1 through 50, Inclusive,** violation, and in accordance with 42 U.S.C. Section 1983, Plaintiff's civil rights have been violated in that they have suffered, and will continue to suffer, damages including but not limited to, physical and/or mental anxiety and anguish, as well as to incur attorney's fees, costs and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. section 1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

Defendants' wrongful conduct as herein alleged was intentional, done with malice, and with a conscious disregard for the rights of the Plaintiff, and as a result of this despicable conduct, Plaintiff is therefore entitled to recover punitive damages from **SOCIAL WORKER DEOCHOA, and DOES 1 through 50, Inclusive,** only in an amount commensurate with the nature of the Defendants' wrongful acts and the amount of the Defendants' wealth.

At all times relevant herein, the right to familial association guaranteed under the Fourteenth Amendment to the United States Constitution was clearly established, such that any reasonable social services agent and/or police officer would know that information provided in attempting to secure a court order to remove a child, implicit is that the information is not known to be false.  A false statement includes omissions and affirmative misstatements if the Commissioner is misled by them.

Prior to C.W.'s unreasonable seizure, Defendants Investigative Social Worker DEOCHOA, and DOES 1 through 50, Inclusive, and each of them, discussed information provided in attempting to secure a court order to remove a child implicit, is that the information is not known to be false. A false statement includes omissions and affirmative misstatements if the Commissioner is misled by them.

As a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

DEOCHOA,  and DOES 1 through 50, Inclusive, acted intentionally and/or with a conscious disregard for Plaintiffs' constitutional rights.  As a result of this conduct, Plaintiffs are entitled to recover punitive damages against these individual defendants.

## COUNT 5
Fourteenth Amendment – Procedural Due Process Right
To be free from Deception in the Presentation of Evidence to the Juvenile Court.
(Right to be free from misrepresentation of facts in order to obtain the removal of a child from parents)

(By Plaintiffs Against Officer Social Worker DEOCHOA, and DOES 1 through 30, inclusive.)
**Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in full, all paragraphs above.**

No matter how much process is required, at a minimum, it requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents.   Malik v. Arapahoe County Dept. of Social Serv., 191 F.3d 1306, 1315 (10th Cir.1999) ("An ex parte hearing based on misrepresentation and omission does not constitute notice and an opportunity to be heard.")

**Officer Social Worker DEOCHOA, and DOES 1 through 50, Inclusive,** were acting under color of state law when they acted, or knew and agreed and thereby conspired, **to remove C.W. from Plaintiff's care, by misrepresenting the facts in order to obtain a court order to obtain a court order granting the removal of C.W. from parents** from Commissioner Potts.
**Officer Social Worker DEOCHOA, and DOES 1 through 30, and each of them, conspired to violate the civil rights of the PLAINTIFF, including violation of PLAINTIFF's rights found in the Due Process Clause under the Fourteenth Amendment of the United States Constitution, by** misrepresenting the facts **in order to convince the Juvenile Court Commissioner to grant a court order to remove the child from the family unit in violation of, and interference with, PLAINTIFF's constitutional right to familial integrity and/or association under the Fourteenth Amendment.**
As a direct result of these defendants' violations, and in accordance with 42 U.S.C. Section 1983, Plaintiff's civil rights have been violated in that  plaintiffs have suffered, and will continue to suffer, damages including but not limited to, physical and/or mental anxiety and anguish, as well as to incur attorney's fees, costs and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. section 1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.
Defendants' wrongful conduct as herein alleged was intentional, done with malice, and with a conscious disregard for the rights of the Plaintiff, and as a result of this despicable conduct, Plaintiff is therefore entitled to recover punitive damages from **Social Worker DEOCHOA, and DOES 1 through 50, Inclusive,** only in an amount commensurate with the nature of the defendants' wrongful acts and the amount of the Defendants' wealth.
At all times relevant herein, the right to familial association guaranteed under the Fourteenth Amendment to the United States Constitution was clearly established, such that any reasonable social services agent and/or police officer would know that parents have a right to be free from misrepresentation of facts in order to obtain the removal of a child from parents.

1      Prior to C.W.'s unreasonable seizure, Defendants Investigative Social Worker DEOCHOA, and DOES 1
through 50, Inclusive, and each of them knew **that parents have a** right to be free from misrepresentation of
2   facts in order to obtain the removal of a child from parents.
       As a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to
3   suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at
trial.
4      **DEOCHOA,  and DOES 1 through 50, Inclusive,** acted intentionally and/or with a conscious disregard for
Plaintiffs' constitutional rights.  As a result of this conduct, Plaintiffs are entitled to recover punitive damages
5   against these individual defendants.

6

## COUNT 6

7   Fourteenth Amendment – Procedural Due Process Right,
To Adequate Post-Deprivation Procedures
8   (a parent has a liberty interest in familial association and therefore a <u>right to prompt and adequate post-
deprivation Judicial review in a child custody case.</u>
9   (By Plaintiffs Against. Social Worker DEOCHOA, and DOES 1 through 30, inclusive.)
**Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in**
10  **full, all paragraphs above.**

11

At all times relevant herein, there existed a clearly established that due process guarantees that the post-
12  deprivation judicial review of a child's removal is prompt and fair.   See, e.g., Campbell v. Burt, 141 F.3d 927, 929
(9th Cir.1998) (procedural due process guarantees prompt and adequate post-deprivation judicial review in child
13  custody case);

14       DEOCHOA, and each of them, and DOES 1 through 50, Inclusive, were acting under color of state law
when they acted, violated Rachelle and Duane's Liberty interest in familial association failing to provide prompt
15  and adequate post-deprivation Judicial review in a child custody case.
       As a direct result of defendant DEOCHOA, and each of them, and DOES 1 through 50,
16  Inclusive,  violation, and in accordance with 42 U.S.C. Section  1983, Plaintiff's civil rights have
been violated in that they have suffered, and will continue to suffer, damages including but not
17  limited to, physical and/or mental anxiety and anguish, as well as to incur attorney's fees, costs
and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. section 1988
18  in an amount not yet ascertained, all of which shall be shown according to proof at trial.
       Defendants' wrongful conduct as herein alleged was intentional, done with malice, and
19  with a conscious disregard for the rights of the Plaintiff, and as a result of this despicable
20  conduct, Plaintiff is therefore entitled to recover punitive damages from **SOCIAL WORKER
DEOCHOA, and DOES 1 through 50, Inclusive,** only in an amount commensurate with the
21  nature of the Defendants' wrongful acts and the amount of the Defendants' wealth.
       At all times relevant herein, the right to familial association guaranteed under the Fourteenth
22  Amendment to the United States Constitution was clearly established, such that **any reasonable social services
agent and/or police officer would know** that parents have a right to prompt and adequate post-
23  deprivation Judicial review in a child custody case.
       Prior to C.W.'s unreasonable seizure, Defendants Investigative Social Worker DEOCHOA, and DOES 1
24  through 50, Inclusive, and each of them knew that parents have a right to prompt and adequate post-
25  deprivation Judicial review in a child custody case.

1       As a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

2       **DEOCHOA, and DOES 1 through 50, Inclusive,** acted intentionally and/or with a conscious disregard for Plaintiffs' constitutional rights. As a result of this conduct, Plaintiffs are entitled to recover punitive damages

3 against these individual defendants.

4

## COUNT 7

5 Fourteenth Amendment – Procedural Due Process Right,

To Adequate Post-Deprivation Procedures

6 (Right to a Post-deprivation judicial review to ratify

the emergency action is prompt and adequate. )

7 (By Plaintiffs Against. Social Worker DEOCHOA, and DOES 1 through 30, inclusive.)

**Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in**

8 **full, all paragraphs above.**

9 "It is well-settled that the requirements of process may be delayed where emergency action is necessary to avert imminent harm to a child provided that adequate post-deprivation process to ratify the emergency action is

10 promptly accorded." Jordon by Jordan v Jackson ." 15 F.3d at 343

11       **DEOCHOA, and each of them, and DOES 1 through 50, Inclusive**, were acting under color of state law when they acted, **violated Rachelle and Duane's Liberty interest in familial association failing to provide Post-**

12 **deprivation judicial review to ratify the emergency action is prompt and adequate**.

      As a direct result of defendant **DEOCHOA, and each of them, and DOES 1 through 50, Inclusive**, violation,

13 and in accordance with 42 U.S.C. Section 1983, Plaintiff's civil rights have been violated in that they have suffered, and will continue to suffer, damages including but not limited to, physical and/or mental anxiety and anguish, as

14 well as to incur attorney's fees, costs and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. section 1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

15       Defendants' wrongful conduct as herein alleged was intentional, done with malice, and

16 with a conscious disregard for the rights of the Plaintiff, and as a result of this despicable conduct, Plaintiff is therefore entitled to recover punitive damages from **SOCIAL WORKER**

17 **DEOCHOA, and DOES 1 through 50, Inclusive**, only in an amount commensurate with the nature of the Defendants' wrongful acts and the amount of the Defendants' wealth.

18       At all times, relevant herein, the right to familial association guaranteed under the Fourteenth Amendment to the United States Constitution was clearly established, such that **any reasonable social services**

19 **agent and/or police officer would know that parents have a right to Post-deprivation judicial review to ratify the emergency action is prompt and adequate**.

20       **Prior to the unreasonable seizure and detainment of C.W., Defendants Investigative Social Worker DEOCHOA, and DOES 1 through 50, Inclusive, and each of them, knew that parents have a right to Post-**

21 **deprivation judicial review to ratify the emergency action is prompt and adequate**.

      AS a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to

22 suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

23 D**EOCHOA, and DOES 1 through 50, Inclusive,** acted intentionally and/or with a conscious disregard for Plaintiffs' constitutional rights. As a result of this conduct, Plaintiffs are entitled to recover punitive damages against these

24 individual defendants.

25

## COUNT 8

Fourteenth Amendment – Procedural Due Process Right

To be free from Deception in the presentation of evidence to the Juvenile Court

To be free from the deliberate suppression of evidence that would have impeached and refuted the testimony given against him/her.

(By Plaintiffs Against Social Worker LUND, and DOES 1 through 20, inclusive.)

Plaintiff realleged, and to the extent applicable, incorporates herein as if set forth in full, all paragraphs above.

Lund, and each of them, and DOES 1 through 50, Inclusive, were acting under color of state law when they acted, violated Rachelle and Duane's Liberty interest in familial association by violating due process rights when the prosecution's knowing use of perjured testimony to convict him and by the prosecution's deliberate suppression of evidence that would have impeached and refuted the testimony given against him. *See Pyle,* 317 U.S. at 216, 63 S.Ct. at 178; *Mooney,* 294 U.S. at 110, 55 S.Ct. at 341.

As a direct result of defendant **LUND, and each of them, and DOES 1 through 50, Inclusive,** violation, and in accordance with 42 U.S.C. Section 1983, Plaintiff's civil rights have been violated in that they have suffered, and will continue to suffer, damages including but not limited to, physical and/or mental anxiety and anguish, as well as to incur attorney's fees, costs and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. section 1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

**LUND, and each of them, and DOES 1 through 50, Inclusive,** wrongful conduct as herein alleged was intentional, done with malice, and with a conscious disregard for the rights of the Plaintiff, and as a result of this despicable conduct, Plaintiff is therefore entitled to recover punitive damages from **SOCIAL WORKER LUND, and DOES 1 through 50, Inclusive**, only in an amount commensurate with the nature of the Defendants' wrongful acts and the amount of the Defendants' wealth.

At all times relevant herein, the right to familial association guaranteed under the Fourteenth Amendment to the United States Constitution was clearly established, such that any reasonable social services agent and/or police officer would know that deliberate suppression of evidence that would have impeached and refuted the testimony given against plaintiffs violates their 14th amendment Due Process Rights.

<u>Prior to the unreasonable seizure and detainment of C.W., Defendants Social Worker LUND, and DOES 1 through 50, Inclusive, and each of them, knew that deliberate suppression of evidence that would have impeached and refuted the testimony given against plaintiffs violates their 14th amendment Due Process Rights.</u>

AS a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

**LUND, and DOES 1 through 50, Inclusive,** acted intentionally and/or with a conscious disregard for Plaintiffs' constitutional rights.  As a result of this conduct, Plaintiffs are entitled to recover punitive damages against these individual defendants.

## COUNT 9

### Violation of Plaintiff's Due Process

**Right to be Free From DECEPTION in the Presentation of Evidence to the Juvenile Court;** (By Plaintiff Against Defendants DEOCHOA, LUND, DOES 1 through 20, inclusive.)

Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, all above paragraphs.

At all times relevant herein, there existed a clearly established due process right of individuals not to be subjected to false accusations by government officials, including the deliberate presentation of false or perjured evidence, and/or by the suppression of exculpatory information in court proceedings or in documents submitted with recommendations or requests made to the court.  Any reasonable social services agent and/or government

1   would know that it is a due process violation to lie, exaggerate, fabricate evidence, and/or suppress material
    exculpatory evidence in court reports and other documents filed with the juvenile court, and/or relied upon by
2   subsequent social workers.

3       Defendants DEOCHOA, LUND, and DOES 1-20, and each of them had the affirmative and self-evident duty
    to be truthful, accurate, and complete in petitions, reports, and documents submitted to the juvenile court- a
    court with power to adjudicate substantial rights, including legal and custodial rights of children and parents.
4   Similarly, defendants had an equal duty to refrain from using improper and deceptive means to obtain judicial
    orders sustaining recommendations disparaging and/or otherwise impairing or impinging upon Plaintiffs' due
5   process rihts.

6       Defendants DEOCHOA, LUND, and DOES 1-20, and each of them, either singularly or jointly acted, and/or
    conspired, to deliberately or recklessly present false statements and/or omit known exculpatory omissions
7   material in the Juvenile Dependency Petition and/or reports filed in the Juvenile Court.  This deceptive conduct
    caused C.W.'s continued and prolonged detention from Plaintiffs' care, custody, and/or control.

8
9       Defendants DEOCHOA, LUND, and DOES 1-20, and each of them was acting under color of state law when
    they jointly acted, agreed, and/or conspired to violate Plaintiff's constitutional rights by, but not limited to
    engaging in deception in the presentation of evidence to the juvenile court.

10
11      As a direct and proximate consequence of this violation, Plaintiffs have suffered, and will continue to
    suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at
    trial.  Defendants DEOCHOA, LUND and DOES 1-20 acted intentionally and/or with a conscious disregard for
12  Plaintiffs' constitutional rights.  As a result of this conduct, Plaintiffs are entitled to recover punitive damages
    against these individual defendants.

13
                                    **SECOND Cause of ACton**
14                                  **42 U.S.C #1985 Claim**
                **Violation of U.S.C.1985 by Plaintiff against Social Worker Defendants,**
15                              **and DOES 1 Through 100, Inclusive**

.6  Plaintiff realleges, and to the extent applicable, incorporates by reference, all paragraphs above.

17  DEFENDANTS and each of them and DOES 1 through 10, inclusive, conspired to and did, remove the minor C.W.
    from PLAINTIFF's care, without notice or a full hearing.  Further, DEFENDANTS and DOES 1 through 10, inclusive,
18  conspired to use and did use trickery, duress and/or presentation of fabrication of evidence, false or distorted
    statements, and suppression of exculpatory evidence, in preparing and/or presenting reports and documents to
19  the Court.  These actions interfered with Plaintiff's rights, including those under the Due Process Clause of the
    Fourteenth Amendment of the United States Constitution.

20  Defendants, and each of them, engaged in said conspiracies for the purpose of depriving PLAINTIFF of equal
    protection of the laws of the United States.  And each of them took several acts in furtherance of the conspiracy,
21  including but not limited to: unlawfully removing and detaining minor C.W. from the care of his mother and father,
    without a valid court order, consent, or exigent circumstances (a belief that  minor was in imminent danger of
22  serious physical injury); denied Plaintiffs their right to notice and an opportunity to be heard prior to said
    detention, continuing to detain C.W. for an unreasonable period after any alleged basis for removal; denied
23  PLAINTIFFS their right to notice and an opportunity to be heard in a reasonable time after the detention; continued
    to detain minor Plaintiff C.W. for an unreasonable period after receiving material information from a key witness;
24  In addition, DEFENDANTS, and each of the, conspired to use trickery, duress, presentation of fabricated and/or
    false evidence, and failed to disclose exculpatory evidence in preparing and presenting reports and court
25  documents to the Court,  The conduct of DEFENDANTS and each of them, interfered with Plaintiffs' rights,

including the right to familial association free from government interference as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

Plaintiffs Rachelle and Duane did, in fact, suffer the deprivation of numerous rights granted to citizens of the United States, including those under the Due Process Clause of the Fourteenth Amendment, which has been interpreted to protect the fundamental liberty interest in familial relations.

SOCIAL WORKER DEFENDANTS, POLICE DEFENDANTS, AND SCAN DEFENDANTS, and DOES 1 through 30, and each of them, acted with malice and with the intent to cause injury to Plaintiffs or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing said Defendants and to deter them and others from such conduct in the future.

Dated this 24th day of January 2019

### THIRD CAUSE OF ACTION
### 42 U.S.C. §1983 Unconstitutional Official
### Policy, Practice, or Custom (Monell Claim)

All Plaintiffs Against, DEFENDANTS including but not limited to County of BENTON, CHILDREN'S ADMNINISTRATION and CPS, ROSS HUNTER and JODIE BECKER, JENNIFER GOURLEY, and DOES 1-30.

Plaintiffs realleged, and incorporate herein as if set forth in full, all of the preceding paragraphs. DEFENDANTS including but not limited to COUNTY OF BENTON AND CHILDREN's ADMINISTRATION, and CPS, ROSS HUNTER and JODIE BECKER, JENNIFER GOURLEY, and DOES 1-30. is a "person" within the meaning of 42 U.SC. §1983 and subject to Monell liability. Monell v. Dept. of Social Services (1978) 436 U.S. 658.  DEFENDANTS including but not limited to COUNTY OF BENTON, CHILDREN'S Administration, and CPS, ROSS HUNTER and JODIE BECKER, JENNIFER GOURLEY, and DOES 1-30.
and each of them, acted under color of state law when committing the acts alleged herein, in violation of Duane and Rachelle's rights

DEFENDANTS including but not limited to County of BENTON, CHILDREN'S ADMNINISTRATION, and CPS ROSS HUNTER and JODIE BECKER, JENNIFER GOURLEY, and DOES 1-30 established and/or followed policies, procedures, customs, and/or practices (hereinafter referred to collectively as "policy" or "policies" which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including those arising under the Fourth and Fourteenth Amendments, by and through, but not limited to, the following polices, practices, customs and/or procedures:
    a.    the policy of detaining and/or detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious physical injury), valid court order and/or consent;
    b.    the policy of removing children from their family and their homes without first obtaining a valid warrant when no true exigency exists;
    c.    the police of examining children without exigency, need, or proper court order, and without the presence and/or consent of their parent or guardian;

      d.    the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated;

e.    the policy of misusing a court process including but not limited to requiring parents to obtain a protection order, even when the protection order is not, in order to deprive plaintiffs of their constitutional rights. The requirement that you seek and obtain a protection order to regain custody of your child is a procedural due process violation of abuse of state power.

Section 1983 it allows a violation of abuse of state power.  It's a policy that CPS uses, enforces, relies on to among other things, control and intimidate parents. It is unconstitutional and an abuse of state power.  It's a misappropriation of state resources to force parents to do something legally that you would not normally do.  It is a widespread practice that is not authorized by written law or expressed policy but is so permanent and well settled that it has the force of law.

      f.    the policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the COURT, causing an interference with the Plaintiffs's rights, including those as to familial relations; and

      g.    by acting with deliberate indifference in implementing a police of inadequate supervision, and/or by failing to adequately supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

      h    by acting with deliberate indifference in implementing a policy of inadequate supervision, and/or by failing to adequately supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

      i.    the practice, custom, and/or usage of making and/or presenting false and/or deceptive allegations in Juvenile Dependency Petitions, i.e. alleging that the child should be declared dependent according to RCW 13.34.030 as follows: (b) the child is abused or neglected as defined in chapter 26.44 RCW; or (c) the child has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development, where there is no evidentiary basis to support the charge.  (This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings.  Plaintiffs reserve their right to amend this pleading as more information becomes available).  On information and belief, plaintiffs allege that the above policies and practices are part and parcel of an effort by County to Fraudulently boost its intervention statistics in order to obtain greater State and Federal funding for it's social services programs.

      DEFENDANTS including but not limited to County of BENTON, CHILDREN'S ADMNINISTRATION and CPS, breached its duties and obligations to Plaintiffs including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select,

supervise, train, control, and review its agents and employees as to their compliance deliberate indifference, permitting MARCO DEOCHOA, KATHY LUND, DOES 1 through 30, inclusive, to engage in the unlawful and unconstitutional conduct has herein alleged.

       COUNTY, CPS, MARCHO DEOCHOA, KATHY LUND, DOES 1 through 30, inclusive, knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged BY THEIR WRONGFUL POLICIES AND ACTS AS ALLEGED HERIN, AND THAT SUCH BREACHES OCCURRED IN CONTRAVENTION OF PUBLIC POLICY AND THEIR LEGAL DUTIES AND OBLIGATIONS TO Plaintiffs; and that such policies, practices, customs and procedures were the moving force behind the constitutional violations alleged herein above.

       These actions, and/or inactions, of DEFENDANTS including but not limited to County of BENTON, CHILDREN'S ADMNINISTRATION and CPS, are the direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred, and will continue to incur, attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. §1988, to an extent and in an amount subject to proof at trial.

### PRAYER

       WHEREFORE, Plaintiff prays for judgement against DEFENDANTS as follows:

       1/ Plaintiffs demand a jury trial as to the issues so triable;

       2/ General damages and special damages according to proof, but in no event less that $2, 000, 000;

       3/ As against only the individual defendants and not any municipality, punitive damages as allowed by law;

       4/ Attorneys fees pursuant to 42 U.S.C. 1988, and any other appropriate statute;

       5/ Injunctive relief, both preliminary and permanent, as allowed by law, application to be filed after the presentation of evidence at trial);

       6/ Costs of suit incurred herein; and

       7. Such further relief as the Court deems just and proper.

Dated : January 25, 2019

          Duane Ward and Rachelle Ward, PLaintiffs